United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHADRICK BAKER,<br><br>    Plaintiff,<br><br>v.<br><br>THE ACADEMY OF ART UNIVERSITY FOUNDATION, et al.,<br><br>    Defendants. | Case No. 17-cv-03444-JSC<br><br>**ORDER RE DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 14 |

Chadrick Baker sues his former school The Academy of Art and University Foundation (the "Academy") and Michael Petricca, Vice President of Campus Safety, (together, "Defendants") for sex discrimination and retaliation under Title IX, breach of contract, and five California common law tort claims. Now pending before the Court is Defendants' motion to compel arbitration pursuant to the Student Enrollment Agreement. Having carefully reviewed the parties' briefs and having had the benefit of oral argument on October 5, 2017, the Court concludes the Enrollment Agreement was not cancelled and the arbitration clause is not unconscionable and GRANTS Defendants' motion.

## BACKGROUND

**A.    Complaint Allegations**

In September 2014, Mr. Baker enrolled in the Academy's Motion Picture and Television Graduate Program. (Comp. ¶ 24.) Mr. Baker began dating a fellow student, Jane Doe, in October 2015. (*Id*. ¶ 26.) Mr. Baker ended the relationship in April 2016, but then began dating Jane Doe again after agreeing to work on the relationship. (*Id*. ¶¶ 31, 36.) Mr. Baker dated Jane Doe until he ended the relationship in September 2016. (*Id*. ¶ 37.)

After their breakup, Jane Doe filed a complaint with the Academy alleging that Mr. Baker

sexually assaulted her. (*Id.* ¶ 40.) Michael Petricca, the Vice President of Campus safety, conducted the Academy's investigation. (*Id.* ¶ 5.) Mr. Petricca's investigation lacked the appearance of impartiality - he failed to interview witnesses aside from Mr. Baker, Jane Doe, and Jane Doe's boyfriend at the time, failed to take notes of the interviews, and eavesdropped on a phone call from Jane Doe to Mr. Baker in an attempt to gather evidence against Mr. Baker. (*Id.* ¶¶ 6-8.) At the conclusion of the investigation, the Academy found Mr. Baker assaulted Jane Doe and expelled him. (*Id.* ¶ 12.) Mr. Baker never admitted to sexually assaulting Jane Doe, believes the Academy breached its duty to investigate the allegations in an unbiased manner, and states the ordeal has caused him severe emotional distress. (*Id.* ¶¶ 10, 15, 17.)

**B.     The Enrollment Agreement**

As part of the admissions process, the Academy offers students an enrollment contract, entitled "Academy of Art University Enrollment Agreement" (the "Enrollment Agreement"). (Dkt. No. 16 ¶ 4.) Students are provided with a secure login ID username and password that enables them to securely access their "Student Self-Service" account and read documentation related to their matriculation, including the Enrollment Agreement. (*Id.* at ¶¶ 6-7.) Students use the Academy's "Student Self-Service" web portal to read the Enrollment Agreement and agree to its terms. (*Id.* at ¶ 7.) The entirety of the Enrollment Agreement is available for review online and the word "Arbitration" appears in bold text. (*Id.* at ¶ 8.) Students scroll down through the text to reach the end of the document where they can click "I Agree" to accept the terms or "Return." (*Id.*; Dkt. No. 16-1 at 5.) If a student clicks "I Agree" the electronic program automatically generates the student's signature as "electronically signed by" followed by the student's name as well as the date and the time the student clicked the "I Agree" box. (Dkt. No. 16 at ¶ 11.) Mr. Baker electronically signed the Enrollment Agreement on August 15, 2014. (Dkt. No. 15-1 at 3.)

The Enrollment Agreement states that tuition is charged by the semester, is subject to change from semester to semester, and that all changes will be contained in the University Catalog or the Catalog Addendum. (Dkt. No. 15-1 at 2, Section B.) Course fees are also contained in the University Catalog, Catalog Addendum, and the Academy's website. (*Id.*) The term of the Enrollment Agreement covers the student's entire enrollment at the Academy - the first day of

class through the last day of attendance. (*Id*., Section C.) Tuition and fee charges are subject to change at any time. (*Id*., Section 6(f).) The Academy "reserves the right" to cancel the Enrollment Agreement at any time up to five days prior to the start of classes if tuition and/or fees increase and replace the Enrollment Agreement with a new agreement reflecting the new tuition and fees." (*Id*.) The Enrollment Agreement may then be accepted or rejected by the student. The last page of the Enrollment Agreement contains an arbitration clause:

> **Arbitration**: Any controversy or claim arising out of or relating to this agreement, breach of this agreement, or termination, whether such dispute gives rise to or may give rise to a cause of action in contract, tort, discrimination (such as claims under the Fair Employment and Housing Act, Title VII, the Americans with Disabilities Act, or the Age Discrimination in Employment Act) or based on any other theory of statute, shall be submitted exclusively to final and binding arbitration in accordance with the laws of the State of California upon a claim submitted in writing to the other Party to this agreement. The agreement to arbitrate shall not deprive a court of jurisdiction over an application of interim relief pending exhaustion of the arbitration process in order to preserve the status quo or prevent irreparable harm before the matter can be heard in arbitration. A neutral arbitrator shall be jointly chosen by both parties from a list of arbitrators supplied by the American Arbitration Association or from any other source mutually agreed upon by the parties. In the absence of such agreement, the list will be supplied by the American Arbitration Association. The duly rendered decision of an arbitrator, including determination of the amount of damages suffered, shall be exclusive, final and binding on both parties. An arbitrator shall not have the authority to alter, amend or modify any of the provisions of this agreement.

(*Id*., Section 6(g).) The "I Accept" and "Return" buttons are located at the end of the agreement, after the arbitration clause. (Dkt. No. 16-1 at 5.) The signatory certifies, above the electronic signature line, he has "read the entire agreement, from top to bottom, and that the institution's cancellation and refund policies have been clearly explained to me." (Dkt. No. 15-1, Section D.)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2-16, provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts are required to enforce arbitration agreements according to their terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66 (2010). "Like other contracts, however, they may be invalidated by 'generally applicable contract

defenses, such as fraud, duress, or unconscionability.'" *Id.* (internal citations and quotations omitted).

The FAA espouses a general policy favoring arbitration agreements. *AT&T Mobility v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 1745-46, (2011). Federal courts are required to rigorously enforce an agreement to arbitrate. *See Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). The court must direct parties to proceed to arbitration should it determine: (1) that a valid arbitration agreement exists, and (2) that the agreement encompasses the dispute at issue. *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013). If the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Where the claims alleged in a complaint are subject to arbitration, a court may stay the action pending arbitration. *Id.* § 3.

## DISCUSSION

There is no dispute that the Enrollment Agreement encompasses Mr. Baker's claims in this action. However, Mr. Baker maintains that the arbitration clause has three fatal flaws which render it unenforceable: (1) the Enrollment Agreement was cancelled when the Academy unilaterally raised tuition and associated fees; (2) it is procedurally unconscionable because it is a contract of adhesion; and (3) it is substantively unconscionable because (a) it is silent on arbitration fees and (b) lacks mutuality as it limits damages available to Plaintiff to the fees and tuition paid to the Academy regardless of his theory of recovery but imposes no similar limitation to the damages the Academy can potentially recover from Plaintiff.

**I.    The Agreement Was Not Cancelled**

Mr. Baker argues the Enrollment Agreement was cancelled when the Academy raised tuition in Fall 2015 and 2016, and thus Mr. Baker's complaint is not subject to arbitration. As support for the cancellation, Mr. Baker relies on Section 6(f), which states that the Academy "reserves the right" to cancel the Enrollment Agreement up to five days before the start of classes if tuition increases and replace it with a new agreement reflecting new tuition and fees. The Court disagrees.

4

"[T]he fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.,* 281 F.3d 929, 934 (9th Cir. 2002). "The interpretation of a contract is a mixed question of law and fact." *Tyler v. Cuomo,* 236 F.3d 1124, 1134 (9th Cir. 2000) (internal citation and quotation omitted). A contract's language is ambiguous if "reasonable people could find its terms susceptible to more than one interpretation." *Id.* "The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous." *Id.* "[T]he determination whether contract language is ambiguous is a question of law." *Id.* "Under the parol evidence rule, a court looks to, and enforces, the plain language of a contract and does not look to extrinsic evidence to interpret the terms of an unambiguous written instrument." *United States v. Nunez,* 223 F.3d 956, 958 (9th Cir.2000) (internal citation and quotation omitted).

Here, the plain language of the Enrollment Agreement is unambiguous – the Academy "reserves its right" to cancel an Enrollment Agreement and issue a new one with the updated tuition fee reflected. Nothing in the contract supports Mr. Baker's contention that the increase of fees automatically cancels an existing Agreement. The "reserves the right" language is critical. The Academy *may* exercise its right to issue a new contract which a student may sign, but the Academy is not *obligated* to create a new Enrollment Agreement. Indeed, other sections of the Enrollment Agreement support the interpretation that the contact is *not* cancelled once Defendants increase tuition. Section B states that tuition may change each semester and those changes are reflected in the "University Catalog" or the "Catalog Addendum." Section C states that the contract's term includes the entire enrollment period at the Academy, from the first day of class through the last day of attendance. Read together, Section B and C support the interpretation that tuition can change during a student's enrollment but that these changes do not automatically cancel the Enrollment Agreement. Accordingly, the Court concludes the Enrollment Agreement, with its arbitration provision, applies to Mr. Baker's complaint.

**II.     The Agreement is Not Unconscionable**

Once a court concludes there is an agreement to arbitrate, it must compel arbitration unless it determines there are grounds for revocation. 9 U.S.C. § 2. The grounds under which an

arbitration agreement may be revoked are governed by state law. *Perry v. Thomas*, 482 U.S. 483, 493, n. 9 (1987). Under California law, "the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 236 (2012). "In order to establish such a defense, the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Poublon v. C.H. Robinson Company*, 846 F.3d 1251, 1260 (9th Cir. 2017). Procedural and substantive unconscionability "need not be present in the same degree." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 910 (2015). Rather, there is a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Armendariz*, 24 Cal.4th at 114). The Court must therefore consider procedural and substantive unconscionability.

### A. Procedural Unconscionability

Mr. Baker contends that the Enrollment Agreement is procedurally unconscionable because it is a contract of adhesion. As he admits, however, even if the Court agrees that the contract is one of adhesion, other factors must be present to render the Enrollment Agreement unenforceable. "While California courts have found that 'the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability' in a range of circumstances, the California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable." *Poublon*, 846 F.3d at 1261 (quoting *Sanchez*, 61 Cal. 4th at 915). "[T]he adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most." *Poublon*, 846 F.3d at 1262.

Mr. Baker has not demonstrated any oppression or surprise beyond that inherent in any adhesion contract. As such, there is a low degree of procedural unconscionability. In *Brazil v. Dell Inc.*, for example, the plaintiffs bought Dell products online and later sued Dell arguing that the online agreement was an adhesion contract because they had no opportunity to negotiate the terms. 2007 WL 2255296, at *5 (N.D. Cal. Aug. 3, 2007). The court concluded that despite the inability to negotiate, the plaintiffs did not experience oppression sufficient for procedural

6

unconscionability because the plaintiffs nevertheless had a meaningful choice not to purchase the Dell products. *Id*. Here, similar to the *Dell* plaintiffs, Mr. Baker is a consumer with options – he was not obligated to enroll in the Academy and has failed to demonstrate any oppression beyond what is inherent in any adhesion contract.

Because Mr. Baker has failed to point to any additional factors which would render the Arbitration Agreement procedurally improper, the mere fact that it was a contract of adhesion is insufficient to show unconscionability unless Mr. Baker can make a high showing of substantive unconscionability.

### B. Substantive Unconscionability

Mr. Baker argues that the Enrollment Agreement is substantively unconscionable because: (a) it is silent on arbitration fees; and (b) lacks mutuality as it limits his damages to fees and tuition paid to the Academy regardless of his theory of recovery with no limitation to the damages the Academy can potentially recover from Mr. Baker.

An arbitration agreement's silence on the subject of attorneys' fees alone "is plainly insufficient to render it unenforceable." *Green Tree Financial Corp. – Alabama v. Randolph*, 531 U.S. 79, 91 (2000). When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. "[U]nfounded assumptions[,]" "unsupported statements," and a "speculative" risk "that [the plaintiff] will be saddled with prohibitive costs" is insufficient to show that arbitration costs are prohibitive. *Id.* at 90 n.6, 91. Mr. Baker's contentions concerning the potential cost of arbitration are "too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91. Mr. Baker provides no evidence that arbitration would be prohibitively expensive. The unsupported statements in Mr. Baker's opposition brief are insufficient to show that arbitration is financially prohibitive. *See Green Tree*, 531 U.S. at 91.

Mr. Baker's second argument that the arbitration clause is unenforceable because it lacks mutuality similarly fails. Mr. Baker asserts his damages are limited to fees and tuition paid to the Academy regardless of his theory of recovery with no limitation to the damages the Academy can potentially recover from Mr. Baker. However, there is no language in the arbitration clause to

7

support this contention.  Instead, the arbitration clause states that it is the arbitrator who decides the extent of damages: "[t]he duly rendered decision of an arbitrator, including determination of the amount of damages suffered, shall be exclusive, final and binding on both parties."  There is no limitation or broadening of damages for either party.

The notice that Mr. Baker relies on to argue his damages are limited is not found in the arbitration clause but in a separate section called "Notice" at the very end of the Enrollment Agreement.  (Dkt. No. 15-1.)  It states: "Any holder of this consumer credit contract [i]s subject to all claims and defense[s] that the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof.  Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."  The notice appears to address the situation where any debt owed by the student to the Academy is transferred by the Academy to another and thus has no applicability to Mr. Baker's claims here.

Even if there is some ambiguity as to whether it applies, Defendants request that the Court sever the notice from the rest of the Enrollment Agreement so that the intent of the parties to engage in arbitration can be carried out.  "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."  Cal Civ. Code Section 1670.5(a).  California courts prefer to sever provisions rather than hold an entire agreement unenforceable.  *See Bigler v. Harker School*, 213 Cal.App.4th 727, 737 (2013) (severing the provision for attorneys' fees as requested by the defendant's counsel because it was easily done pursuant to Cal. Civ. Code Section 1670.5); *Armendariz*, *supra,* 24 Cal.4th at 123–124 (explaining the benefits of severance rather than voiding the entire agreement).

the Court concludes that the notice, if applied to Mr. Baker's claims, would lead to an unconscionable result as it suggests his damages would be limited to his tuition and fees paid.  The Court further concludes that the notice is not integral to the remaining terms and thus easily severable.  *See Armendariz*, 24 Cal.4th at 123-124.  Accordingly, assuming without deciding that

8

the notice applies to Mr. Baker's claims, and in light of the strong public policy favoring arbitration, the Court severs the notice from the Enrollment Agreement. The remaining Enrollment Agreement is not overly harsh nor does it shock the conscience. *See Bigler*, 213 Cal.App.4th at 87. As such, the remaining Enrollment Agreement, including the arbitration provision, is not procedurally or substantively unconscionable.

### III. Mr. Petricca's Ability to Enforce Arbitration

Defendants argue that defendant Mr. Petricca is entitled to invoke the Enrollment Agreement's arbitration provision as an agent of the Academy and pursuant to equitable estoppel theory. Mr. Baker does not oppose Mr. Petricca's ability to invoke the arbitration provision. The Court agrees that Mr. Petricca acted as an agent of the Academy when he conducted the Title IX investigation, and that Mr. Baker's claims alleging Title IX violations against the Academy are intertwined with Mr. Petricca's conduct. As such, Mr. Petricca is entitled to invoke the arbitration provision. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (a nonsignatory to an arbitration agreement may invoke arbitration if there is an agency relationship between the nonsignatory and a party to the agreement or when a signatory alleges concerted misconduct by the nonsignatory and another signatory).

## CONCLUSION

For the reasons stated above, Defendants' motion to compel arbitration is GRANTED. This action is stayed pending the results of that arbitration. Within 30 days of a final decision in the arbitration action, the parties shall file a joint status report.

This Order disposes of Docket No. 14.

**IT IS SO ORDERED.**

Dated: October 5, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge